91   261
103   483

A. E. KIDD, Appellant, v. THE AMERICAN PILL & MEDICINE COMPANY.

4   **Master and Servant:** DISCHARGE OF SERVANT.  A servant may properly be discharged because he sells pills to produce abortion.

2   EVIDENCE.  It may be shown that he knew the character of the pills long before he entered the employment from which he was discharged.

1   SAME.  It may be shown on the question whether the discharge was proper, that he sold a business to defendant, and by certain misrepresentations in selling, induced defendant to employ him as general manager.

3   **Instructions Construed Together.**  A general instruction that plaintiff must establish his cause of action is not erroneous when other parts of the charge tell the jury that certain results depend upon defendant's proving certain things, especially when no instructions are asked.

*Appeal from  Clay  District  Court.*—HON. GEORGE H. CARR, Judge.

MONDAY, MAY 21, 1894.

ACTION for damages.  Verdict and judgment for defendant.  Plaintiff appeals.  From a ruling amending the order overruling the motion for a new trial, defendant appeals.  Plaintiff having first served notice of his appeal, he will be treated as appellant.—*Affirmed.*

*Soper, Allen & Morling* for appellant.

*Cory & Bemis, Parker & Richardson* and *W. W. Cornwall* for appellee.

KINNE, J.—I.  After the consolidation of plaintiff's actions, the pleadings presented, in substance, the following state of facts:  It was alleged in the petition that defendant was a corporation; that on January 13, 1891, plaintiff was elected general manager of defendant for the term of one year, and the board of directors

fixed his salary at three thousand dollars and expenses, payable monthly; that plaintiff entered upon the performance of his duties as such manager, and performed same until May 15, 1891, when defendant wrongfully, and without cause, discharged him; that he has always been ready and willing to perform his duties as such manager; that there is one hundred dollars due him on salary to July 13, 1891; that he has made diligent efforts to find other like employment, and has failed to do so. In another count the same facts are pleaded, and salary for two months ending September 15, 1891, claimed. In another count, under the same facts, the same amount, for the same period, is claimed as damages. To these several counts defendant answered, admitting its corporate capacity, and that it hired plaintiff as its general manager on January 13, 1891, at a salary of three thousand dollars per year, payable monthly, and that he worked for defendant in said capacity until May 15, 1891, and has been fully paid therefor; that on May 15, 1891, and for good cause, defendant discharged plaintiff as of that date; that said discharge was made under and by virtue of provisions in defendant's articles of incorporation and by-laws; that defendant had good cause to discharge plaintiff, in this: That he was incompetent, extravagant in his expenses, and by misstatements influenced the board of directors to contract large indebtedness; that the business was illegal and disgraceful; that his contracts could not be enforced; that in conducting such illegal business, plaintiff got defendant into trouble in collecting claims due it; that plaintiff was contemptuous, and insisted upon running the business of the corporation as he saw fit, without regard to defendant's wishes; that he was discharged because he was engaged in selling certain pills for an illegal, immoral, and unlawful purpose known to him, to wit, for the purpose of procuring abortions of pregnant women; that he, in advertising certain medicine, had

taken his advertising matter from a copy of the advertisement of Radam's Microbe Killer, thereby rendering defendant liable to damages; that, prior to selling his business to defendant, he represented that his medicines were of good merit and standard medicines, and were proper and legitimate, and would perform what was claimed for them, and proposed to sell defendant the right to manufacture and sell the same, and represented them as valuable; that relying upon his representations, and believing them, defendant purchased said right to manufacture and sell said medicines, and employed plantiff as its general manager; that in fact some of the medicines were known by plaintiff to be sold and used for immoral and illegal purposes, which fact he kept from defendant, and after he became its manager, he advertised and sold same for said immoral and illegal purposes; that other medicines so sold were not standard medicines, were not salable, were worthless, and plaintiff had no exclusive right to manufacture or sell the same; that, under his management, plaintiff spent within five months, as expenses, over and above defendant's income, over five thousand dollars without receiving scarcely anything therefor; that, by reason of plaintiff's stubbornness in the business of its board, trouble and quarrels resulted, the prosperity of the business was greatly retarded, and bankruptcy assured; that since May 15, 1891, plaintiff has performed no services for defendant; that plaintiff was incompetent; that the business in which he was engaged, and for which his services were contracted to be performed, was a violation of the laws of Iowa; that defendant did not discover said facts until the indebtedness due defendant for said medicines became due. Plaintiff denied all allegations of new matter in the answer, and averred that defendant at all times was aware of and directing the sale of said medicines, and knew of the nature of the composition of the same and their

effects, and in all things plaintiff acted by virtue of the express instructions and directions of defendant. In a counterclaim, defendant charged plaintiff with the appropriation to his own use of certain moneys and property of the defendant, which he denied.

The cause was tried to a jury, and they returned a general verdict for defendant, and made the following special findings: "*First.* What, if any, amount do you find due the plaintiff upon his claim for damages for balance of salary prior to July 15,—for balance of salary prior to July 15, 1891,—being the claim for one hundred dollars damages? *A.* Nothing. *Second.* What amount do you find plaintiff entitled to on his claim of five hundred dollars as damages on account of salary from July 13 to September 15, 1891? *A.* Nothing. *Third.* Was plaintiff, during his employment by defendant, at the time of his discharge, managing the defendant's said business to the best of his ability, and in good faith giving the defendant the benefit of his experience and judgment in conducting the said business? *A.* No. *Fourth.* In his management of defendant's said business, was plaintiff unreasonably extravagant? *A.* No. *Fifth.* Did the defendant employ the plaintiff to conduct for it an illegal and unlawful business? A. No. *Sixth.* Was the defendant's business conducted as an illegal business? *A.* Yes. *Seventh.* Was the defendant's business conducted in an illegal manner? *A.* Yes; in part. *Eighth.* Do you find that Le Duc's pills have a legitimate use? *A.* Yes. *Ninth.* Did the defendant's officers or stockholders, or any of them, know the character of the business that the defendant bought of the plaintiff? *A.* Some of them did. *Tenth.* Did the plaintiff willfully misappropriate any of the defendant's money? *A.* No. *Eleventh.* Did the plaintiff willfully convert any of the defendant's goods or property? *A.* No. *Twelfth.* Was plaintiff incompetent in his manage-

ment of defendant's business? *A.* Yes. *Thirteenth.* Did the plaintiff dishonestly procure the notes of the record of the meeting of the stockholders of December [January] 13, 1891, to be changed? *A.* No. *Fourteenth.* Did the plaintiff change the contract between the defendant and W. J. A. Montgomery, after the same was signed, without the knowledge or consent of Montgomery? *A.* No. *Fifteenth.* Do you find that Le Duc's pills, as advertised and sold, were so advertised and sold for an illegal purpose? *A.* In part they were. *Sixteenth.* What, if any, sum do you allow defendant upon its counterclaim? *A.* Not anything." The court overruled the motion for a new trial, and rendered judgment on the verdict against plaintiff for costs and he appeals. Five months thereafter, plaintiff filed a motion and showing asking that the order overruling the motion for a new trial be amended *nunc pro tunc*, so as to show that an exception was taken thereto. This application was resisted, but the motion was sustained, and the record amended accordingly. From this ruling and order the defendant appeals.

II. As to plaintiff's appeal. Defendant insists that the appeal should be dismissed for reasons stated in its motion filed and argued at the January term, 1894, of this court. As that motion was overruled, the matters presented in it will not now be considered.

III. This case presents many questions, and a discussion of them all would not be warranted. A large number of errors present purely technical questions, which are without substantial merit, and need not be discussed. We shall treat of a few matters which seem of controlling importance in the proper disposition of the case. It is argued with much persistence that plaintiff was an officer of the corporation, elected by the stockholders and hence not subject to be removed by the board of directors. As we read the record, plaintiff was, after January 13, 1891, general

manager of defendant company, elected as such by the board of directors. Under the articles of incorporation and by-laws, the board were invested with the authority to so elect him, and to discharge him for good cause.

IV. There was no error in admitting testimony relating to false representations made by plaintiff to defendant company as to his indebtedness, and the amount and character thereof. It was a part of the contract of purchase of the plaintiff's business that defendant should pay certain of his debts and employ him as its general manager. If he made false statements relating to them, thereby inducing the defendant to purchase said business, and assume and pay debts not contemplated by the agreement, and by reason thereof, also induced the employment from the discharge of which he now complains, he was guilty of practicing a fraud upon the defendant, and was dishonest and unreliable. This testimony clearly tended to show proper cause for plaintiff's discharge.

V. It is claimed that the testimony of one Crane, to the effect that, three years prior to the trial, plaintiff told him that Le Duc's pills would produce an abortion, and that was the purpose of them, was improperly admitted, because too remote, and not relating to the time plaintiff was in the defendant's employ. The evidence tended to show plaintiff's knowledge of the effect of these pills, and the use and purpose for which plaintiff was then making them. After entering defendant's employ, he made and sold the same pills, for the same purpose, and withheld from the defendant his knowledge of the illegal and immoral use for which the pills were made until after he had entered its employment. It was proper to show that he knew, prior to entering defendant's service, the character of the pills, and the illegal purpose for which they were manufactured, as showing that he had such knowledge while he was acting for defendant.

VI.   Error is assigned because of the failure of
the court, in its statement of the case to the jury, to
refer to the reply filed by plaintiff in the justice court.
This does not appear to have been a ground of the
motion for a new trial, and is raised for the first time
in this court.   We can not, therefore, consider it.

VII.   It is insisted that the court erred in its in-
structions, in that it treated count one of plaintiff's
petition as being a claim for services performed, and
the other counts as being for damages for a breach of
the contract, when, as it is claimed, the theory of the
petition was that the contract remained in force, and
that the plaintiff had been prevented by the defendant
from performing the stipulated service.   It is unfortu-
nate that the pleader failed to make his meaning clear
to the trial court.   We think, in view of the condition
of the pleadings, the court might properly treat the
petition filed before the justice, and the amendment
thereto, as it did.   The original petition clearly claimed
an amount due for services rendered up to July 13,
1891, and it appears, without dispute, that no services
were, in fact, rendered after May 15, 1891.   The amend-
ment was not pleaded or treated as a substitute for the
original petition.   Plaintiff appealed the case from the
justice court to the district court.   At the same time,
he had pending in the district court an action to re-
cover an amount he claimed to be due him from July 15
to September 15, 1891.   In one count of the petition in
this action he claims for salary, and in another for
damages.   Both actions were, on plaintiff's motion,
consolidated and tried as one, in the district court.   We
do not see how plaintiff is prejudiced, in view of the
special findings, even if the court did err in the manner
claimed.   The jury found specially that plaintiff did
not manage the business to the best of his ability; that
he conducted defendant's business as an illegal busi-
ness, and that defendant did not employ him to do

that; that he conducted the business in an illegal manner; that his management was incompetent. These findings being supported by the evidence, plaintiff could in no event have recovered, and hence, is not prejudiced by the action of the court of which he complains.

VIII.    It is urged that the court erred in its instructions touching the burden of proof. The court charged that it was incumbent on plaintiff to establish his cause of action. There was no error in that. Reading the instructions altogether, they are not open to the criticism made by counsel, that they required plaintiff to show that the contract was not illegal, and that the business was not conducted illegally. These and other matters pleaded as a defense were required to be established by the defendant. The court, in one instruction, said to the jury: "If the defendant has shown by a preponderance of the evidence" certain facts which are recited, and which were pleaded by defendant, "then the defendant has established the defense set up by it." In another instruction, the jury was told that the burden was on defendant to show that the business was in violation of the statute, and that the medicines were sold with an intent to be used for an unlawful and illegal purpose. As the instructions in this respect were correct as far as they went, it was incumbent on plaintiff to ask further instructions if he deemed them important. *Duncombe v. Powers*, 75 Iowa, 188, 39 N. W. Rep. 261; *Martin v. Davis*, 76 Iowa, 763, 40 N. W. Rep. 712; *Deere v. Wolf*, 77 Iowa, 119, 41 N. W. Rep. 588. This he did not do.

IX.    The real question in this case is, was good cause shown for the discharge of plaintiff from defendant's employ? If the special findings in this respect are supported by the evidence, there can be no doubt that such cause existed. The jury found that plaintiff,

during his employment, and at the time of his discharge, was not managing the business to the best of his ability, and in good faith giving the defendant the benefit of his experience and judgment; that he was incompetent; that he conducted the business as an illegal business, and in an illegal manner; that Le Duc's pills were advertised and sold for an illegal purpose.   We think each and all of these findings were warranted by the evidence.   We can not review the evidence, in detail, relating to all of these matters.   As bearing upon the correctness of some of these findings, we may properly refer to certain letters received, and to the answers thereto, which were dictated by plaintiff, to advertisements placed under his direction, and to circulars sent.   The letters received usually came from women.   We quote from them: "Have seen your ad of Dr. Le Duc's pills.   I have a friend who is suffering from over two months' suppression, and has tried everything * * * at great expense.   Judging from your advertisement, you seem to have great faith in your remedy.   I should like to try your pills upon this condition: that you send me at once enough of your remedy to cure my friend, and name your price, and, the day it is assured that the function has resumed its action, I will forward the price," etc.   To which the following reply was sent: "We have an article that we guaranty three packages to relieve or refund the money. * * * We warrant these pills to promote menstruation or remove suppression of the menses."   Another letter reads: "I would like to know just the possibilities of your pills.   Will they remove the foetus early in pregnancy? Let me know just how they act on the system.   Your letter will be strictly confidential."   Answered thus: "We regret to say that any emmenagogue that will excite the flow of the menses when delayed by cold, fright, etc., will, generally, with the flow, remove and

carry off young foetus. The pills are pleasant, safe, and harmless. * * * We warrant three packages of Le Duc's Pills to relieve tardy, irregular, and delayed menstruation, which we sell for five dollars, or refund the money if they do not, when taken as per direction, and for trouble, as per circular in package." Here is another: "My wife has used all three boxes of pills you sent me, but not cured. She commenced one week before the monthly flow should come. She used them after special directions, taking pills three times a day. She have followed directions closely. I see you send the money back if three boxes not cure. Please send me some pills or some medicines,—some will cure her. We have seven children, and my wife don't like to have any more. Or send some of the money back." Another letter: "I write for information in regard to Dr. Le Duc's periodical pills. Would like to know if they will cure suppression of two months' or more standing. Will they cause miscarriage, and, if they will, how long after pregnancy." To this the following reply was sent: "If these packages do not relieve, we will refund the money. * * * We send goods first-class mail, plain wrapper if desired. All communications strictly confidential. These goods are safe, sure, and harmless when taken for complaints as per circular." Plaintiff, as is shown by the evidence, wrote the letters in such a way as to induce people to buy the medicine, and, at the same time, so, that he thought criminal liability would be avoided. Plaintiff caused advertisements of the medicine to be published, and circulars sent, containing the following statements: "Dr. Le Duc's Periodical Pills—Great French Remedy. Acts only upon the generative organs, and cures suppression of the menses, from whatever cause, and all periodical troubles peculiar to women. * * *. These pills should not be used during pregnancy." Again: "We positively guaranty these pills to act directly on the

menstrual system; that they will promote menstruation and relieve irregularities, suppression, obstruction, and derangements." Another: "Cures all suppression, irregularities, and monthly derangements; safe, harmless, and reliable. They positively must not be taken during pregnancy." Another: "Dr. Le Duc's Regulator is only a *legitimate medicine*, and those who use it for improper purposes *do it at their peril*, and must not complain if they are disappointed. It is only intended for correct and proper purposes." Another: "If taken during the change of life, great danger and suffering will be avoided. *Makes childbirth easy*, lessens pain, shortens labor, diminishes danger to mother and child." Another: "*Caution*. These pills must not be taken by ladies during the first five months of pregnancy."

From the above and much other testimony it is very clear that the business plaintiff was conducting was illegal, and that he expected it to thrive by reason of the demand made for medicines for the purpose of procuring abortions. The character of the correspondence, and the makeup of the advertisements, all point, unmistakably, to the illegal design and purpose in selling the medicines, and, in connection with the testimony, show that the intent was to aid and encourage the commission of crime. We can conceive of no better reason for discharging an employee than that he was knowingly engaged in rendering easy the commission of one of the most common, yet most reprehensible, of crimes. His conduct was the more censurable in that he was transacting this business under the thin guise and pretense that it was legitimate. We can not extend this opinion by dwelling on other causes for plaintiff's discharge. This one alone was sufficient. The directors of the defendant company would have been derelict in their duty, and partners in plaintiff's criminal conduct, had they not cut short his official career when the facts touching it came to their notice.

X. We have examined this record with care, and discover no prejudicial error. The charge of the court was full, and fair to plaintiff. In so far as plaintiff's requests to charge were proper, the substance of them was embodied in the instructions, in fact, given. Having affirmed the case on plaintiff's appeal, it is not necessary that we consider matters presented in defendant's appeal. The case will, therefore, on both appeals, be AFFIRMED.